# In the United States Court of Federal Claims

No. 24-245

(Filed: September 6, 2024)

|  |  |
|---|---|
| **CHRISTOPHER JOHNSON,** | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| Defendant. | ) ) ) |

Jason W. Manne, Manne Law Office, Pittsburgh, PA, and Michele R. Vollmer, Penn State Veterans & Servicemembers Clinic, University Park, PA, for plaintiff.

Gisela A. Westwater, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, Patricia M. McCarthy, Director, and William J. Grimaldi, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., as well as Breier W. Scheetz, Lieutenant Commander, United States Navy, Office of the Judge Advocate General, General Litigation Division, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge

Pending before the court is the United States' motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). *See* Def.'s Mot. to Dismiss Compl. ("Def.'s Mot."), ECF No. 5. Plaintiff, Mr. Christopher Johnson, is a veteran of the United States Marine Corps ("Marine Corps") who served this country from February 11, 1991, until August 29, 1992, when he was discharged after being injured in a car accident. Compl. ¶¶ 3, 6, 9, ECF No. 1. After determining that he was unfit for duty and that the injuries he suffered were not incurred in the line of duty, the Marine Corps discharged Mr. Johnson without rating his disabilities or considering him for medical military retirement or severance pay. Compl. ¶ 9. Mr. Johnson requests that his military record be corrected to reflect that he is entitled to disability retirement pay and benefits from August 29, 1992, to June 30, 2017. Compl. ¶ 1.

On April 16, 2024, defendant filed its motion to dismiss for lack of subject matter jurisdiction, arguing that plaintiff's complaint is time barred. *See* Def.'s Mot. Plaintiff

responded on May 26, 2024.  Br. of Pl. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp."), ECF No. 8.  The government replied on July 31, 2024.  Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply"), ECF No. 15.  With the court's permission, plaintiff then filed a sur-reply to defendant's motion.  *See* Pl.'s Sur-Reply Pertaining to Def.'s Mot. to Dismiss ("Pl.'s Sur-Reply"), ECF No. 19.  The court held a motion hearing on August 15, 2024.  Hr'g Tr. (Aug. 15, 2024).  The motion, accordingly, is ready for disposition.

## BACKGROUND[1]

Mr. Johnson filed his complaint on February 16, 2024, over 31 years after he was discharged.  *See* Compl. ¶ 8.  At issue is whether intervening events bring Mr. Johnson's claim within the Tucker Act's six-year statute of limitations.

Plaintiff enlisted in the Marine Corps as a machine gunner on February 11, 1991, to "fulfill his lifelong dream of serving as an officer in the Marines."  Compl. ¶ 6.  Less than a year later, on October 25, 1991, plaintiff sustained injuries as a passenger in a motor vehicle accident while serving on active duty.  Compl. ¶ 6.  The driver had a blood alcohol content of .159%, and Mr. Johnson was aware that the driver was intoxicated.  Pl.'s Resp. Ex. A, at 3 ("2017 Correction Board Decision").

The Marine Corps investigated the circumstances surrounding the accident, and initially, the investigating officer determined that plaintiff's injuries "were incurred not in the line of duty and were due to" plaintiff's and the driver's "misconduct."  Pl.'s Resp. Ex. B ¶ 2 ("1991 Commander's Memo."), ECF No. 8-2.  In March 1992, the commanding officer of the Second Marine Division reviewed this determination and rejected the investigating officer's findings with respect to plaintiff.  *Id.* ¶ 3; 2017 Correction Board Decision at 3.  Instead, the commanding officer reasoned that the vehicle's "high rate of speed" was "[o]ne of the primary contributing factors leading to the accident" and could not have been anticipated by plaintiff.  1991 Commander's Memo. ¶ 3.  Accordingly, the commanding officer concluded plaintiff's injuries "were incurred in the line of duty and not due to his own misconduct."  *Id.*

On February 28, 1992, a clinical psychologist concluded that Mr. Johnson suffered "cognitive deficits" and "ordered him to refrain from participating on the firing range, guard duty, and driving government vehicles."  Compl. ¶ 7.  After spending two months in the hospital and undergoing cognitive testing over three months, Mr. Johnson was deemed non-deployable on March 31, 1992.  Compl. ¶¶ 6, 8.

Two Physical Evaluation Boards ("PEBs") and two correction boards have considered the circumstances of Mr. Johnson's discharge and his resulting entitlement to benefits.  First, a PEB convened in June 1992 and determined Mr. Johnson was unfit for duty and that his injuries were not incurred in the line of duty because they were due to intentional misconduct.  Comp. ¶ 9; Def.'s Mot. Ex. A ("1992 PEB Decision"), ECF No. 5-1.  As a result, the Marine Corps

---

[1] The following recitations do not constitute factual findings, but rather are recitals attendant to the pending motion and reflect matters drawn from the complaint and the parties' briefs and attachments thereto.

discharged plaintiff "without rating his disabilities to consider him for medical retirement pay . . . or severance pay."  Compl. ¶ 9; *See* 1992 PEB Decision.

Next, in January 2017, the correction board reviewed Mr. Johnson's petition challenging the 1992 PEB Decision.  *See* 2017 Correction Board Decision at 3-4.  On April 12, 2017, the correction board found "the existence of an injustice warranting . . . partial corrective action."  *Id.* at 4.  The correction board "was unable to find evidence that showed the [1992] PEB considered" the commanding officer's determination that plaintiff's injuries "were incurred in the line of duty."  *Id.*  Moreover, the correction board agreed with the commanding officer's opinion.  *Id.*  Accordingly, the correction board determined this "injustice must be remedied by correcting [plaintiff's] PEB record to show that his injuries were incurred in the line of duty and returning his record to the PEB to issue a disability rating and revised final disability adjudication in his case."  *Id.*

On February 23, 2018, an informal PEB issued its decision finding plaintiff fit to continue active duty.  Pl.'s Resp. Ex. C, at 5 ("2018 PEB Decision"), ECF No. 8-3.  The PEB recognized that "[t]here is no doubt [plaintiff] suffered a TBI [(traumatic brain injury)]," had "evidence of a contusion in his left occipital lobe," and "report[ed] memory issues."  *Id.* at 6.  Nevertheless, the PEB reasoned that plaintiff has been a teacher since he was discharged and his reported impairments "did not appear to prevent him from functioning as a teacher," so there was "no evidence that supports [his] condition was or is unfitting."  *Id.*  Mr. Johnson did not request a formal PEB to continue pressing his arguments.  Compl. Ex. A, at 3 ("2020 Correction Board Decision"), ECF No. 1-2.

Mr. Johnson petitioned the correction board again on November 15, 2019.  2020 Correction Board Decision at 1.  In support of his petition, Mr. Johnson provided "a report from a medical expert from 9 August 2019" that "conclu[ded] that to a reasonable degree of medical certainty . . . [h]is disability conditions are due to the service-connected severe TBI and other conditions [plaintiff] sustained in October 1991."  *Id.* at 2. The correction board denied his petition and upheld the 2018 PEB determination that he was fit for service.  *Id.* at 4-5.  It focused primarily on the facts that the 2018 PEB was properly comprised, its conclusion "was supported by the information available," and that Mr. Johnson "accepted the informal 2018 PEB decision, and did not seek a formal PEB within a timely manner."  *Id.* at 2-3.

## STANDARDS FOR DECISION

Under the Tucker Act, this court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  Because the Tucker Act does not itself confer substantive rights, a plaintiff bringing a claim pursuant to the Tucker Act must identify a separate money-mandating source of substantive law to support his or her claim.  *See Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).  One such money-mandating statute is 10 U.S.C. § 1201, which establishes military disability compensation entitlement.  *See Fisher*, 402 F.3d at 1174-75.

The plaintiff bears the burden of establishing the court's subject matter jurisdiction by a preponderance of the evidence. *Rogers v. United States*, 95 Fed. Cl. 513, 515 (2010). A court lacks subject matter jurisdiction if the statute of limitations over a claim has expired. *Chisolm v. United States*, 82 Fed. Cl. 185, 192 (2008) (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008)), *aff'd*, 298 F. App'x 957 (Fed. Cir.). Disability retirement claims such as plaintiff's must be filed "within six years after such claim first accrues." 28 U.S.C. § 2501; *see Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005). "[A] plaintiff's invocation of a permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy." *Martinez*, 333 F.3d at 1304.

Under RCFC 12(b)(1) a party may move to dismiss a claim for lack of subject matter jurisdiction. When ruling on a motion to dismiss for lack of subject matter jurisdiction, the court is required to "accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

## ANALYSIS

At issue is whether the 1992 PEB was the first competent board finally to resolve plaintiff's claim for disability retirement and, if so, whether plaintiff's claim is nevertheless timely based on subsequent administrative decisions or the accrual suspension doctrine.

### A. The authority of the 1992 PEB

In general, a claim for disability retirement benefits accrues when "the appropriate military board either finally denies such a claim or refuses to hear it." *Chambers*, 417 F.3d at 1224. This is referred to as the "first competent board rule." *Id.* at 1225. A board is competent so long as it is "statutorily authorized." *Id.* at 1224.

Nevertheless, "there are circumstances under which the service member's failure to request a hearing board prior to discharge has been held to have the same effect as a refusal by the service to provide board review." *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990). Under this exception to the first competent board rule, "[t]he appropriate inquiry . . . is whether at the time of his separation" the service member "knew that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected." *Chambers*, 417 F.3d at 1226.

Plaintiff avers that the 1992 PEB did not trigger the statute of limitation because it failed to address plaintiff's eligibility for disability benefits and, accordingly, "act[ed] without proper authority." Pl.'s Resp. at 12-13. Instead, because the 2018 PEB was the first to address these issues, it was the first competent board. Pl.'s Resp. at 13.

In response, defendant starts from the premise that a board is competent if it is legislatively authorized. Def.'s Reply at 2. According to the government, the 1992 PEB meets that definition, notwithstanding the deficiencies Mr. Johnson alleges. Def.'s Reply at 8. On this basis, the statute of limitations expired on August 29, 1998, because the 1992 PEB was the first competent board, it determined Mr. Johnson was not entitled to disability retirement, and "[t]hat

4

determination became final upon Mr. Johnson's discharge" on August 29, 1992.  *See* Def.'s Mot. at 1.  Next, the government avers that the *Real* exception applies only to cases in which there is no decision by a statutorily authorized board and even then serves to set the accrual date at discharge if, at that time, the plaintiff "knew he was eligible for disability retirement due to a permanent disability that was not a result of intentional misconduct and was service related."  Def.'s Reply at 9 (quoting *Chambers*, 417 F.3d at 1226).  Because the 1992 PEB was statutorily authorized and rendered a decision regarding plaintiff's claim, the *Real* exception does not apply.  *Id.*

     Formal and informal PEBs are both statutorily authorized military boards whose decisions are "sufficient to trigger the running of the six-year limitations period."  *Jones v. United States*, 149 Fed. Cl. 703, 708 (2020).  Mr. Johnson's argument concerning the 1992 PEB's failure to address his eligibility for disability benefits is best understood as a challenge to the board's conclusion, not its authority to hear and resolve Mr. Johnson's claim.  Indeed, this court rejected a similar argument in *Feliciano v. United States*, 114 Fed. Cl. 584 (2014).  In that case, two separate Medical Evaluation Boards referred plaintiff to PEBs.  *Id.* at 586-87.  The first PEB rejected plaintiff's referral based on a pending administrative separation due to misconduct.  *Id.* at 587.  Based on this misconduct, she was later discharged under other than honorable conditions, and a second PEB was never convened to address the second referral.  *Id.*  In 2010 the Naval Discharge Review Board upgraded plaintiff's discharge to honorable.  *Id.*  Thereafter, she sought disability retirement benefits from the correction board.  *Id.*  In 2012 the correction board denied her request, noting that the upgrade of her discharge did not entitle her to consideration by a PEB or correction of her naval record to show she was retired for a physical disability.  *Id.*  The court found that the PEB was the first competent board, notwithstanding the subsequent upgrade of her discharge to honorable.  *Id.* at 589-90.  It was inapposite that a second PEB was never convened because the first considered and rejected the first referral based on the same injuries.  *Id.* at 589.  As in *Feliciano*, a PEB considered Mr. Johnson's injuries prior to discharge and his discharge status was later upgraded.  This subsequent development did not change the 1992 Board's status as the first competent board.[2]

     Next, the *Real* exception does not apply here.  In *Real*, the Federal Circuit considered whether the statute of limitations for a plaintiff's military disability claim should run from his discharge in 1974 or from the date the first competent board finally denied his claim in 1987.  *See* 906 F.2d at 1560.  The *Real* plaintiff did not appear before a board before he was discharged.  *See id.* at 1559.  Accordingly, the Federal Circuit focused on whether the plaintiff's "failure to request a board hearing prior to discharge" had "the same effect as a refusal by the service to provide board review" for purposes of determining when a claim accrued, and concluded that, in cases involving such failure, the servicemember's claim accrues at discharge.  *See id.* at 1560-61.

---

[2] Mr. Johnson argues his case is distinct from *Feliciano* because the 2017 Correction Board "did not just grant him a discharge upgrade" but also stated that "[t]he 1992 PEB must be corrected and the record must be returned to the PEB so that he can be given a disability rating and then have his disability adjudication."  Hr'g Tr. at 12:10 to 13:5.  The court addresses this argument *infra*.

Because Mr. Johnson appeared before a PEB prior to his discharge, the *Real* exception is inapplicable.[3]

### B. *The legal effect of subsequent administrative decisions*

To determine the legal effect of post-discharge administrative decisions, the parties dispute which case law the court should apply to this case and how. Plaintiff relies primarily on *Interstate Commerce Commission v. Brotherhood of Locomotive Engineers*, 482 U.S. 270 (1987) ("*Brotherhood*"), *Smalls v. United States*, 298 F. App'x 994 (Fed. Cir. 2008), and *Green v. White*, 319 F.3d 560 (3rd Cir. 2003), in arguing that a correction board decision that reopens proceedings restarts the statute of limitations. *See* Pl.'s Resp. at 10. Defendant, however, contends that the Federal Circuit's *Martinez* decision distinguished Administrative Procedure Act ("APA") cases like *Brotherhood* and made clear that, in the military pay context, new decisions from permissive boards do not alter the statute of limitations. *See* Hr'g Tr. 23:21 to 25:10; Def.'s Reply at 2. Defendant further argues the court should be persuaded by *Davila v. United States*, 2022 WL 2827478, a case in which this court refused to follow plaintiff's suggested approach, and that the 2017 correction board's decision to grant relief also does not save his claim from being time-barred under the half-a-legal-loaf doctrine. Def.'s Reply at 3-4; Hr'g Tr. 25:22 to 26:12.

In general, "the statute of limitations for Tucker Act claims is not tolled by the claimant's exercise of his right to seek permissive administrative review of his claim." *Martinez*, 333 F.3d at 1312. This is, in part, because plaintiffs need not exhaust their claim by applying to a correction board before filing suit in this court. *Id.* at 1307. "The creation of a permissive administrative remedy . . . does not affect the time period for which Congress has waived sovereign immunity and permitted judicial relief to be sought." *Id.* at 1312. As discussed below, courts have carved out exceptions to this rule and held that, under certain circumstances, a military board's decision can renew or restart the statute of limitations. The parties dispute whether Mr. Johnson's claim is timely considering the administrative decisions in his case that occurred after discharge.

1. *The half-a-legal-loaf doctrine.*

The half-a-legal-loaf doctrine addresses when a plaintiff may seek relief based on a military board's decision granting plaintiff relief. Under the doctrine, "a claimant can often found a new cause of action, or a 'continuing' claim, upon a favorable determination by the Correction Board . . . where that determination stops short of giving the full relief it was compelled in law to grant on the presentation then made." *DeBow v. United States*, 434 F.2d 1333, 1335 (Ct. Cl. 1970). "A major reason" for this doctrine "is that, once the Board decides to give a remedy, it should not be free to slice the relief illegally or arbitrarily, sending the claimant forth with half-a-legal-loaf or even less." *Id.* That said, the doctrine applies "only where the relief sought should have followed as a matter of law from the partial relief granted by the

---

[3] Mr. Johnson's argues that the *Real* exception applies because he lacked sufficient knowledge to challenge the 1992's PEB when he was discharged. *See* Pl.'s Resp. at 14-16. These contentions are addressed *infra*.

Correction Board, and when the claimant was required to seek administrative relief before coming to the court." *Rumph v. United States*, 228 Ct. Cl. 855, 857 (1981).

The half-a-legal-loaf doctrine does not apply to plaintiff's claim. First, Mr. Johnson was permitted but not required to resort to the correction board to upgrade his discharge. *See Rumph*, 228 Ct. Cl. at 857-58. Even if the court were to read the 2017 correction board decision as requiring Mr. Johnson to return to the PEB and receive a new determination, the 2018 PEB granted all the relief that was required as a matter of law by the 2017 correction board's decision. In 2017, the correction board found that the "injuries that formed the basis for the PEB's finding of unfit for continued naval service on 22 May 1992 were incurred in the line of duty [and] not due to intentional misconduct or willful negligence." 2017 Correction Board Decision at 4. Accordingly, it ordered that plaintiff's record be "corrected to find that his service incurred disability was incurred in the line of duty" and that the PEB "issue a disability rating and revised final disability adjudication in his case." *Id.* at 3-4. The correction board did not address the 1992 PEB's finding that plaintiff was unfit for service. Although the order apparently assumes that the 2018 PEB would leave that finding unchanged, it did not prohibit the PEB from reconsidering Mr. Johnson's fitness determination. Notably, the 2017 correction board also did not dictate whether or not Mr. Johnson was entitled to disability compensation. Based on this record, the 2017 correction board's decision is best read as a direction to the PEB to reassess plaintiff's eligibility for disability benefits based on the new line-of-duty determination. That the 2020 correction board "determined that the 2018 PEB was executed without error or injustice" supports this reading. 2020 Correction Board Decision at 4. Mr. Johnson received the entire remedial loaf he was promised by the 2017 correction board.

### 2. *The effect of an administrative decision re-opening plaintiff's petition.*

Next, the parties dispute the legal effect of an administrative decision reopening a plaintiff's case. This dispute turns on how *Brotherhood* and its progeny apply to plaintiff's claim.

In *Brotherhood*, multiple unions sought judicial review of an Interstate Commerce Commission ("ICC") order. *Brotherhood*, 482 U.S. at 273-76. The unions filed two consecutive petitions with the ICC challenging its jurisdiction to issue the order. *Id.* at 276-77. The ICC denied both petitions. *Id.* The unions next sought judicial review of the ICC's actions, and the United States Court of Appeals for the District of Columbia Circuit vacated both ICC orders. *Id.* On appeal, the Supreme Court focused on the relevant provisions of the Hobbs Act, which governs judicial review of final orders of the ICC. *Id.* at 277-78. The Court held that "[w]hen the Commission reopens a proceeding for any reason and, after reconsideration, issues a new and final order setting forth the rights and obligations of the parties, that order—even if it merely reaffirms the rights and obligations set forth in the original order—is reviewable on its merits." *Id.* at 278. In contrast, if ICC refuses to reopen a proceeding, only "the lawfulness of the refusal" is reviewable. *Id.* Further, "where a party petitions an agency for reconsideration . . . on the same record that was before the agency when it rendered its original decision, 'an order which merely denies rehearing of . . . [the prior] order is not itself reviewable.'" *Id.* at 280 (quoting *Microwave Comm'c'ns, Inc. v. FCC*, 515 F.2d 385, 287 n.7 (D.C. Cir. 1974)). The court then remanded the case "with instructions to dismiss the petitions for lack of jurisdiction" because neither petition brought forth new evidence or changed circumstances. *See id.* at 286-87.

In *Green*, 319 F.3d 560, the Third Circuit applied *Brotherhood's* logic to a case in which a servicemember sought to upgrade his discharge and found the statute of limitations had been renewed. Relying on *Brotherhood*, the Third Circuit concluded that a correction board decision that "re-opens a proceeding and rules upon a petition that does contain . . . new evidence . . . will constitute a final agency action and will re-start the six-year time limit" under 28 U.S.C. § 2401(a).[4]  319 F.3d at 566. The *Green* plaintiff was discharged on a less-than-honorable basis in 1950 and asked the Army Discharge Review Board to upgrade his discharge to honorable in 1981. *Id.* at 562. That board rejected his application, and in 1982 the Army Board for the Correction of Military Records upheld the discharge review board's decision. *Id.* The correction board then denied two subsequent petitions to reopen his discharge review case for failure to submit new evidence. *Id.* In 1999, plaintiff filed another petition with the correction board providing for the first time an affidavit he authored that stated that his discharge was at least in part racially motivated and that his military records were likely destroyed in a fire. *Id.* Although the correction board initially denied his petition, the Secretary of the Army ultimately directed it to consider Mr. Green's evidence. *Id.* The correction board then "appeared to re-open the proceedings" and "denied Green's application on the merits" in October 2000. *Id.* at 562-63. Next, Mr. Green filed a complaint in district court, and that court dismissed his claim as time barred after finding his claim accrued in 1982 when the correction board first rejected his application. *Id.* at 563. The Third Circuit then reversed and remanded because the 2000 correction board memorandum appeared to treat Mr. Green's petition "as if it contained new evidence and re-opened proceedings in Green's case." *Id.* at 567-68. The Third Circuit focused on the correction board's statements classifying some of the attachments as "new evidence." *Id.*

The same year *Green* was decided, the Federal Circuit considered en banc whether correction board decisions bear on the statute of limitations applicable to military discharge cases in *Martinez*, 333 F.3d 1295. There, the plaintiff was separated from active duty based on misconduct and transferred to the Army Reserves in February 1992. *Id.* at 1299-1300. In 1995, a correction board denied Mr. Martinez's request to expunge the misconduct from his record, void his discharge from active duty, and award him a retroactive promotion and back pay. *Id.* The correction board then denied plaintiff's request to reconsider that decision in 1997 and, in August 1998, Mr. Martinez filed suit in the Court of Federal Claims. *Id.* at 1300. This court dismissed his case as time barred. *Id.* On appeal, plaintiff argued the statute of limitations should run from the correction board's decision rather than discharge, either because he was required to apply to the correction board before bringing a Tucker Act claim or because his application to the correction board renewed the statute of limitations. *Id.* at 1302, 1311. The Federal Circuit rejected both arguments. First, it held Congress did not impose a requirement that servicemembers "exhaust their remedies in the correction boards before filing suit under the Tucker Act" and noted that historical evidence supports the Federal Circuit's "consistent interpretation of the correction board legislation as creating a permissive avenue for collateral

---

[4] Both 28 U.S.C. § 2401(a), the statute at issue in *Green*, and 28 U.S.C. § 2501, the statute at issue here, bar claims unless they are filed within six years of the claim accruing. *Compare* 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."), *with* 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.").

administrative relief, not a mandatory prerequisite to suit." *Id.* at 1306.  Second, it reasoned that the well-settled principle that the Tucker Act's statute of limitations "is not tolled by the claimant's exercise of his right to seek permissive administrative review of his claim . . . cannot be subverted by simply recharacterizing the effect of a correction board decision on the limitations period as generating a second cause of action." *Id.* at 1312.  It further noted that the plaintiff relied on "nonstatutory review actions under the APA seeking equitable relief," and rejected these cases as unpersuasive.  *Id.* at 1313.  It explained that "[b]ecause the APA actions did not turn on a claim for money, the actions could be said to accrue at the time of the challenged agency action . . . rather than at the time of the action that caused the plaintiff monetary loss—the discharge itself."  *Id.*

Next, in *Smalls*, 298 F. App'x 994, the Federal Circuit cited to *Brotherhood* in finding the statute of limitations was not renewed by a subsequent board decision because the servicemember requested reconsideration from the board long after a reasonable time had passed.  The plaintiff in *Smalls* was discharged based on a physical disability that the board found both pre-existed and was not aggravated by his service.  *Id.* at 994-95.  Between 1986 and 2005 the service member challenged this determination before the Board for the Correction of Naval Records, the Secretary of the Navy, and two other district courts before ultimately filing in the Court of Federal Claims in 2007.  *Id.* at 995.  The Court of Federal Claims dismissed his complaint as "barred by the statute of limitations."  *Id.*  On appeal, Mr. Smalls argued that a 2005 motion for reconsideration he made to the correction board was based on "new and material evidence that should have restarted the statute of limitations on his claim," and, alternatively, that the "denial of his application for correction is a new final agency action subject to judicial review."  *Id.* at 996.  The Federal Circuit quoted the Supreme Court's statement in *Brotherhood* that "[a] petition for reconsideration by the [Correction] Board does not restart the statute of limitations unless there is a showing of new evidence or changed circumstances."  *Id.* (quoting *Brotherhood*, 482 U.S. at 278-79).  It then affirmed this court's dismissal, explaining that the statute of limitations "was not restarted by Smalls' submission of new evidence when he filed for reconsideration" and "his request for reconsideration by the [Correction] Board was also long past the point of reasonableness and it therefore did not restart" the statute of limitations.  *Id.* at 997.

Most recently, this court applied *Smalls* and *Martinez* to dismiss a servicemember's claim as barred by the statute of limitations.  *Davila*, 2022 WL 2827478.  The *Davila* plaintiff fell and injured his wrist and ankle while stationed at an Army base.  *Id.* at *1.  He later alleged that, during his recovery in a hospital, an officer sexually assaulted him.  *Id.*  A Medical Evaluation Board found plaintiff unfit "based on [p]laintiff's limited range of motion in his wrists due to secondary . . . advanced arthritis that existed prior to service," and he was "honorably discharged from the Army on March 8, 1973."  *Id.*  Plaintiff first applied to the correction board in 1997, which denied his application after finding there was "no basis for [p]laintiff's claim for medical retirement."  *Id.*  Plaintiff applied again in 2019 and raised for the first time allegations that the officer who allegedly sexually assaulted him influenced his discharge in retaliation for refusing the officer's advances.  *Id.*  The correction board treated his application as a request for reconsideration of its 1998 decision and considered a PTSD diagnosis issued in 2002 as well as a psychologist's opinion that plaintiff suffered from military sexual trauma ("MST") and trauma-related anxiety and that these conditions were potentially connected to the medical complaints that led to his discharge.  *Id.*  The correction board again denied plaintiff relief.  *Id.*

Plaintiff then filed a *pro se* complaint in this court in 2021. *Id.* at *2. The court found that plaintiff's claim accrued when the correction board issued its denial in 1998. *Id.* at *4. The court found that his 2018 application was not based on new evidence or changed circumstances because the psychologist's 2019 opinion diagnosing plaintiff with MST was based on information that dated back "several years." *Id.* at *5. Specifically, plaintiff had firsthand knowledge of the events when they occurred in 1973 and was first diagnosed with PTSD in 2002. *Id.* The court went on to note that, even if this was considered new evidence or a changed circumstance, plaintiff's reconsideration request was not made in a reasonable amount of time measured from the correction board's 1998 denial. *Id.* at *6. The court considered and rejected plaintiff's argument that the correction board's 2019 decision reopened proceedings. *Id.*[5] It explained that plaintiff's argument relied on case law concerning the accrual of a claim brought under the APA, and that the Federal Circuit had distinguished "the accrual of an APA claim and the accrual for a military pay claim under the Tucker Act." *Id.* (citing *Martinez*, 333 F.3d at 1313).

Plaintiff argues that the facts in this case are unique and that, as a result, the court should find that the 2017 correction board reopened proceedings and the 2018 PEB decision reset the statute of limitations. Pl.'s Resp. at 9-10. According to plaintiff this is consistent with *Brotherhood*, *Smalls*, and *Green*. In plaintiff's view, *Brotherhood* held that an agency's decision to reopen proceedings is reviewable on the merits and starts a running of a new statute of limitations. *Id.* at 7. Next, plaintiff reads the Federal Circuit's decision in *Smalls* to "recognize[] the applicability of the *Brotherhood* reconsideration rules to military disability claims." *Id.* at 8. Plaintiff analogizes his case to *Green* and argues two facts render this case a matter of first impression: (1) the correction board found for rather than against him, and (2) the 1992 PEB acted without authority at the time of discharge. *Id.* at 9-11. In plaintiff's view, this case law and these two facts support a finding that his claim is timely.

According to defendant, "[t]he 2018 PEB determination . . . neither tolled the statute of limitations that began to run in 1992 nor gave rise to a new cause of action." Def.'s Mot. at 1. Defendant distinguishes *Brotherhood*, on the grounds that it challenges a deadline imposed by the Hobbs Act for appealing a final order of the Interstate Commerce Commission rather than a jurisdictional statute of limitations. Def.'s Reply at 4-5. Defendant argues that *Smalls* confirms that to restart the statute of limitations in a military disability pay case a motion for reconsideration must both (1) show new evidence or changed circumstances, and (2) be made within a reasonable time. *Id.* at 6. Defendant contends that plaintiff satisfies neither requirement. The commanding officer's memorandum was created in 1992, "his condition was known at the time of his discharge," and "Mr. Johnson could have requested correction of his military record and reconsideration by the PEB at any point after discharge." *See id.* at 7, 11. Furthermore, plaintiff's decision to request reconsideration in 2016, 24 years after the 1992 PEB, is "long past the point of reasonableness" under this court's precedent. *Id.* at 7 (quoting *Smalls*, 298 F. App'x at 997, and citing *Davila*, at *6, *Quailes v. United States*, 109 Fed. Cl. 651, 658

---

[5] The *Davila* court discusses, and Mr. Johnson cites, *Sendra Corp. v. Magaw*, 111 F.3d 162 (D.C. Cir. 1997). *Davila*, 2022 WL 2827478, at *6; Pl.'s Resp. at 7. In *Sendra*, the D.C. Circuit applied the *Brotherhood* analysis to an APA claim and recognized that a letter from the Bureau of Alcohol, Tobacco, and Firearms would restart the statute of limitations if the Bureau's letter "represented its decision after reopening the proceedings." *Sendra Corp.*, 111 F.3d at 167.

10

(2013), and *Schmidt v. United States*, 89 Fed. Cl. 111, 121-22 (2009)). Defendant also contends *Davila* supports its reading of the relevant case law. *Id.* at 3-4.

Under *Martinez*, a correction board's denial of a servicemember's claim does not change the accrual date of a claim for disability retirement. Although the court did not address whether a favorable correction board would alter the accrual date, its reasoning applies equally to such circumstances. The *Martinez* court explained that the legislative text establishing correction boards provides veterans permissive avenues to seek administrative relief. The favorability of the correction board's decision does not change its status as a permissive administrative remedy. Servicemembers can bring their claims in this court without first applying to the relevant correction board. *Martinez*, 333 F.3d at 1302-10. And, in cases where the servicemember has sought review before a correction board and that board has reached its decision, that decision is reviewable in this court. Accordingly, following *Martinez*, this court and the Federal Circuit have analyzed not whether a correction board decision reopened proceedings but whether a petition for reconsideration filed with the board makes "a showing of new evidence or changed circumstances" and is "made within a reasonable time." *Smalls*, 298 F. App'x at 996; *see also Van Allen v. United States*, 236 F. App'x 612, 614 (Fed. Cir. 2007) (upholding this court's finding that a two-year period between the first competent board's decision and plaintiff's reconsideration application "clearly exceeds the short or reasonable period"); *Quailes v. United States*, 109 Fed. Cl. 651, 658 (2013) (20-year delay is unreasonable); *Davila*, 2022 WL 2827478, *6 (20-year delay is unreasonable). Because this analysis turns on the same facts relevant to the accrual suspension doctrine, the court addresses both together.

    3. *Plaintiff's discovery of new evidence and the timeliness of his requests for reconsideration*.

The accrual of a military compensation claim is suspended Under 28 U.S.C. § 2501 "until the claimant knew or should have known that the claim existed." *Jones*, 149 Fed. Cl. at 709 (quoting *Martinez*, 333 F.3d at 1319). The accrual suspension doctrine is "strictly and narrowly applied," and a plaintiff need not "obtain a complete understanding of all the facts before the tolling ceases and the statute begins to run." *Jones*, 149 Fed. Cl. at 709 (first quoting *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985), then quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988)). A plaintiff invoking the doctrine "must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Welcker*, 752 F.2d at 1580 (quoting *Japanese War Notes Claimants Ass'n of the Phil., Inc. v. United States*, 373 F.2d 356, 359 (Ct. Cl. 1967)). That a military board committed an error is insufficient to trigger accrual suspension. *Id.* at 710.

Relatedly, as discussed, a correction board's decision that reopens a servicemember's claim restarts the statute of limitations if there "is a showing of new evidence or changed circumstances" and the motion for reconsideration is "made within a reasonable time." *Smalls*, 298 F. App'x. at 996. What constitutes a reasonable time for bringing a reconsideration request depends upon the circumstances of each case, but generally a servicemember must make such a request within weeks, not years. *See Davila*, 2022 WL 2827478, at *4 (citing *Gratehouse v. United States*, 512 F.2d 1104, 1109 (Ct. Cl. 1975), *Van Allen v. United States*, 70 Fed. Cl. 57, 62 (2006) (finding a two-year delay unreasonable when the servicemembers fitness for duty

considering a "permanent and stable" disability was at issue)); *See also Smalls*, 298 F. App'x at 997 (finding "[t]he fact that [plaintiff] was pursuing other avenues of appeal does not change th[e] fact" that the plaintiff filed suit in this court fifteen years after the first competent board finally denied his application).

      Plaintiff contends he could not have knowingly waived his right to challenge the 1992 PEB decision because he was aware of neither the commanding officer's memorandum nor the extent of his TBI. Pl.'s Resp. at 14-16. The commanding officer's memorandum "shows on its face that Mr. Johnson was not provided with a copy of the reversal," *id*. at 14, and plaintiff contends the earliest he learned of this memorandum was in 2016 when he petitioned the correction board for relief, *id.* at 16. Regarding his TBI, plaintiff contends the separation code on his 1992 discharge papers "prevented [p]laintiff from receiving treatment from the [VA] and needed rehabilitation," *id.* at 4, until he "gained access to VA healthcare professionals in 2017," after the first correction board decision. *Id*. at 16. Relatedly, plaintiff further contends there is no evidence that Mr. Johnson received at discharge the 1992 PEB memo indicating he was being discharged for a physical disability not incurred in the line of duty. Hr'g Tr. 9:22 to 10:6. Nor did plaintiff's DD-214 discharge form indicate which physical disability provided the basis for his discharge or that he would not be entitled to disability retirement. Hr'g Tr. 10:7-19.

      The government argues accrual suspension does not apply because the 1992 PEB "made findings that put Mr. Johnson on notice of the PEB's rejection of his claims." Def.'s Mot. at 8. Specifically, the government avers that plaintiff "knew the extent and . . . general nature of his injuries" and could infer that he was deemed not to be entitled to pay or VA benefits at discharge from the fact that he received no pay or benefits after he was discharged. Hr'g Tr. 21:11-25. Accordingly, the government contends Mr. Johnson had sufficient knowledge of his claim for disability retirement benefits at that time or, at the latest, as of 2016 when he learned of his commanding officer's memorandum. Def.'s Reply at 10-11.

      To determine whether the accrual of Mr. Johnson's claim was either suspended under accrual suspension or renewed by a subsequent administrative decision, this court first determines when Mr. Johnson had sufficient knowledge regarding his claim and second whether he timely took the action to pursue his claim.

      Here, plaintiff has not made a showing of new evidence or changed circumstances supporting his reconsideration request. Notably, the 2017 correction board classifies neither plaintiff's TBI diagnosis nor the commanding officer's memorandum as new evidence. *See* 2017 Correction Board Decision at 4-5. Like the psychologist's opinion in *Davila*, the commanding officer's memorandum addresses events that plaintiff directly experienced. Plaintiff experienced the traffic accident firsthand, and accordingly knew the circumstances of the accident when it occurred in 1992. What is more, the commanding officer's memorandum was included in plaintiff's file before he was discharged. Plaintiff contends neither that he was unaware of the investigation into the accident, nor that he was denied access to the records of that investigation.

      While plaintiff may not have known the full extent of his TBI in 1992, he knew a significant amount concerning the severity of his conditions. He spent "two months in the hospital, and was tested for cognitive defects for three months" immediately following the accident. Compl. ¶ 6. He was thereafter ordered "to refrain from participating on the firing

range, guard duty, and driving government vehicles," and these activity restrictions were later expanded.  Compl. ¶¶ 7-8.  There are also indications that Mr. Johnson "ha[d] evidence of a contusion in his left occipital lobe" and "reported memory issues."  2018 PEB Decision at 6.  Indeed, plaintiff's injuries were deemed severe enough at the time to cause him to be discharged.  Compl. ¶ 9.

Based on these facts, plaintiff has failed to establish that his injuries were inherently unknowable for the purposes of the accrual suspension doctrine.  Moreover, plaintiff has failed to establish by a preponderance of evidence that government concealment prevented him from discovering his commanding officer's memorandum until 2016 or 2017.  The same is true with respect to his TBI diagnosis.

Plaintiff learned of his commanding officer's memorandum before the correction board issued its decision of April 12, 2017.  *See* 2017 Correction Board Decision at 3-4.  Likewise, taking as true plaintiff's allegation that the denial of medical military retirement prevented him from obtaining VA benefits, *see* Hr'g Tr. 33:24 to 34:10, he obtained access to the VA and was rated at some point in 2017, Hr'g Tr. 27:2-22.  Plaintiff nevertheless delayed his reconsideration request for an unreasonable amount of time.  First, after the informal PEB issued its decision on February 23, 2018, Mr. Johnson failed to request a formal hearing and did not continue to press his claim until November 15, 2019, when he filed again with the correction board.  2018 PEB Decision at 6; 2020 Correction Board Decision at 1-2.  Additionally, that correction board issued its opinion in May 2020, and Mr. Johnson delayed filing with this court until February 16, 2024.

Accordingly, even if Mr. Johnson's claim is based on new evidence or changed circumstances, his requests to reconsider his claim were unreasonably delayed.   First, when he learned of his commanding officer's memorandum, he pursued relief before a permissive correction board without also filing a claim in this court.  *See Martinez*, 333 F.3d at 1309 ("All that a service member need do to preserve both the judicial remedy and the right to a reviewable decision by the correction board is to [timely] file suit" in this court and "request that the court action be stayed until the correction board proceeding is completed.").  Next—after the 2017 correction board returned the case to the PEB and the PEB denied him disability retirement benefits on the basis that he was fit for duty—plaintiff failed to request a formal PEB and waited over eight months to apply to the correction board.  Finally, when the 2020 correction board denied his application, Mr. Johnson waited over three-and-a-half years to file his complaint in this court.

The same considerations render Mr. Johnson's claim too late under the accrual suspension doctrine.  The latest Mr. Johnson learned of his commanding officer's line of duty determination was April 12, 2017, and he obtained his TBI diagnosis at some point in 2017.  Accordingly, the statute of limitations would have expired at the end of 2023 at the latest.

Based on the foregoing neither the accrual suspension doctrine nor subsequent administrative decisions in this case save Mr. Johnson's claims from being time barred.[6]

---

[6] Mr. Johnson requested the opportunity to conduct jurisdictional discovery based on disputes about "whether or not the [p]laintiff would have been able to seek out his records and

**CONCLUSION**

For the reasons stated, the court finds that it lacks subject matter jurisdiction over the claims in Mr. Johnson's complaint.  Accordingly, defendant's motion to dismiss is GRANTED.  The Clerk is DIRECTED to dismiss plaintiff's complaint and enter judgment in favor of defendant.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

what the nature of his disability was and what that impact would have."  Hr'g Tr. 8:23 to 9:14.  Because the record before the court provides a sufficient basis for resolving the defendant's motion to dismiss, the court finds jurisdictional discovery is not warranted.